[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 976 
Appellant, a Negro 16 years of age, was indicted, tried and convicted for the Aggravated Rape, Article 42, Criminal Code, of a 38 year old white woman and was sentenced to death by electrocution. In his appeal to this court, he relies upon four bills of exception for reversal of his conviction and sentence.
The rape occurred during the early morning hours of October 4th 1947 at the residence of the victim in Violet, Louisiana where she was living with her husband and four young children. The facts are that appellant lived across the street from this house; that he entered it with force and arms at a time when the woman's husband was away[1] and that she awakened and was confronted with his nude figure standing over her with a hammer in hand, demanding money. She told him that the money was on a shelf in an adjoining room, whereupon appellant requested indulgence in sexual intercourse and, when his demands were denied, he pulled a sheet off the woman, stuck a knife in her neck and, by threats, forced her to accede to his desires. Thereafter, appellant obtained a wallet containing $5.23 from the house and departed with instructions to his victim not to give *Page 978 
an alarm. As soon as he left, the woman reported the occurrence to neighbors, an investigation was begun and appellant was arrested on the same morning at Bridge-side Inn (where he was residing). Later in the day, while incarcerated in the parish jail, appellant is alleged to have made an oral statement to the jailer, Aldemar Estopinal, which was received in evidence over his objection.
This is the most serious bill of exception presented for determination. In the oral statement made by appellant to his jailer, he admitted the burglary and his demand that the woman submit to sexual intercourse; that he made her turn her back toward him and that he placed his sexual organ between her legs. Appellant claims that the statement was obtained as the result of threats and violence administered by a Deputy Sheriff and State Police Officer after his arrest and confinement in the parish jail.
The only witness testifying for the State respecting the circumstances under which the statement was made was the jailer, Estopinal. He asserted, in substance, that, at about 3:30 in the afternoon on October 4th (the day of the arrest), Deputy Sheriff Langlois and the State Police officer were questioning appellant with respect to the commission of the crime; that no one threatened appellant nor was he subjected to any type of coercion and that, about an hour and a half after the questioning had *Page 979 
been completed, appellant called him over to the cell and voluntarily made the statement to him. On cross-examination, however, the witness, when questioned as to the details of the interrogation of appellant, remarked:
"Well, I'll tell you what the State Police said, if you want me to tell you. The State Police told him, after he scraped the dirt[2] off the foot on the newspaper, and scraped it off his pants, and told him after he scraped it up, he said: `Boy, I have got you in the palm of my hand. You had better confess to me.' The boy didn't say a word. He kept telling the boy. He turned to Mr. Langlois, he said: `It's no use.'
"So Mr. Langlois questioned the boy. He was in the cell questioning and the boy wouldn't talk. The boy wouldn't say a word, so then they went off and I went with them."
Appellant testified that he was beaten, mistreated and otherwise coerced by Langlois and the State policeman and that the latter told him that he was going "but I'm coming back; and when I come back, you can give your soul to God, and you know what to me." *Page 980 
The State policeman was not called while the jury was withdrawn to rebut the evidence of appellant[3] so it is evident that the trial judge placed no credence whatever in appellant's testimony. While we cannot declare, from a reading of the evidence, that the judge erred in his unqualified acceptance of the jailer's testimony and his disbelief of appellant, we are of the opinion that the State did not carry the burden placed upon it by Article 451 of the Code of Criminal Procedure by establishing affirmatively that appellant's statement to the jailer was "free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." This is because the testimony of the jailer, which must be accepted as true, shows that the State policeman told appellant within two hours of the time the statement was given "Boy, I have got you in the palm of my hand. You had better confess to me." We cannot regard this assertion as a mere exhortation or adjuration to speak the truth. On the contrary, it must be considered as a veiled threat or a coercive bidding calculated, under the circumstances, to induce a confession irrespective of its truth or falsity. *Page 981 
And it is of no moment that appellant failed to immediately respond to the officer's command to confess or that he made the highly incriminating acknowledgment to his jailer instead of his inquisitor. Indeed, it would be impossible to measure the effect of the officer's declaration upon appellant's mind and it is for this reason that the law excludes confessions "if any degree of influence has been exerted". State v. Henry,196 La. 217, 198 So. 910, 917; State v. Young, 52 La.Ann. 478, 27 So. 50 and Bram v. United States, 168 U.S. 532, 549, 18 S.Ct. 183,42 L.Ed. 568. While there can be little doubt that the insistence of the officer to confess because "I have got you in the palm of my hand" would have influenced a man of judgment to some extent, an even more rigorous view of the declaration must be applied here — for it is apparent that appellant, being but 16 years of age, was mentally immature despite the fact that he was fully developed from a physical standpoint. See Haley v. Ohio,332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224.
This court has but recently held, in State v. Ross,212 La. 405, 31 So.2d 842, 845, that, where an officer stated to one *Page 982 
accused of crime "the best thing to do is to tell the truth because we have the evidence against you", it was not to be regarded as an exhortation to speak the truth but as a declaration calculated to induce a confession.[4] The rationale of that decision was that the statement carried with it an innuendo of reward which tended to induce a confession. In the matter at hand, we think the declaration of the officer contains the hint that failure to speak might not be tolerated.
We notice that the State, in its brief,[5] questions that the oral statement made by appellant to the jailer falls within rules applicable to a confession. It is professed that it is really an exculpatory statement of the crime of rape and, as such, was receivable in evidence without an affirmative showing that it was free and voluntary. In support of its position, the State cites Article 449 of the Code of Criminal Procedure; State v. Picton, 51 La.Ann. 624, 25 So. 375 and State v. Terrell,175 La. 758, 144 So. 488.
This contention is not well founded. Article 449 of the Code of Criminal *Page 983 
Procedure declares that the term "admission" is applied to facts not involving criminal intent, whereas, the term "confession" applies only to an admission of guilt and not to an acknowledgment of facts merely tending to establish guilt. However, the Article which controls the case is Article 454, reading:
"The rule that a confession produced by threat or promise is inadmissible in evidence does not apply to admissions notinvolving the existence of a criminal intent." (Italics ours.)
The converse of the italicized clause is obvious — that admissions involving the existence of a criminal intent or inculpatory facts are governed by the rules applicable to confessions. The oral statement, apart from appellant's confession of burglary, reveals his criminal intent to commit rape as he admitted placing his sexual organ between the woman's legs. This is an inculpatory fact; the statement is exculpatory only to the extent that it does not concede penetration.
The Picton and Terrell cases, upon which the State relies, are inapposite. In the former, the defendant, charged with embezzlement, had voluntarily communicated with the manager of his employer with a view of compromising his shortages for $1000. During the interview, which occurred prior to the arrest, the defendant made certain damaging statements of fact — but none of them involved the existence of a criminal intent. In these circumstances, *Page 984 
the court correctly held that there was no confession and that the statement relative to the crime of the defendant was of an exculpatory nature.
In the Terrell case, the three defendants were tried for murder, following a robbery committed by them. One of the questions presented for determination was whether a statement given by one of them to the police was an admission rather than a confession. The court found in the affirmative, inasmuch as it was an acknowledgment of facts largely of an exculpatory nature and it was concluded that, since it did not involve criminal intent, it was receivable under Article 454 of the Code of Criminal Procedure without the affirmative showing required for the admission of a confession.
Since a new trial must be granted because of the error in admitting the oral statement in evidence, it is unnecessary that we discuss the other bills of exception relied on by appellant.
The conviction and sentence are annulled and set aside and the case is remanded to the district court for a new trial.
HAMITER and MOISE, JJ., dissent.
O'NIELL, C. J., takes no part.
[1] He worked on a night shift at an ice factory.
[2] The evidence shows that the State Police Officer scraped dirt from appellant's feet and trousers for the purpose of analysis with dirt found on the floor of the victim's house.
[3] The State policeman testified after appellant's oral statement to the jailer had been admitted in evidence and denied that he threatened appellant or that he made the statement which appellant attributes to him. He, however, did not deny that he told appellant that he had him in the palm of his hand and that he had better confess.
[4] The writer of this opinion dissented in the Ross case and has not changed his views in any respect. He, however, is of the belief that the case at bar is distinguishable from the Ross case on two grounds — (1) that the language used by the police officer in this matter is much stronger in its context and, therefore, cannot be regarded as a mere exhortation, and (2) that, in view of the fact that appellant is a boy 16 years of age, the chances of influencing him were much greater than in the case of an adult.
[5] The Attorney General stated, in oral argument, that the admissibility of the statement was governed by the same rules applicable to a confession and it was treated as a confession in the District Court.