SUMMERS, Justice.
 

 The question here is whether courtroom identification of an accused at trial is to be excluded from evidence because the accused was exhibited to the witness before trial at a lineup conducted for identification purposes when the accused was not represented by counsel and he had not been advised of his right to counsel.
 

 On the night of September 7, 1961, Mrs. Doyan Foster retired about 8:30. She was alone in the small house where she and her husband lived in the town of Homer, Louisiana. Her husband, an assistant coach at Homer High School, was in Bossier City, 50 miles away, scouting a rival football team.
 

 About 10:30 a noise awakened her. Thinking her husband had arrived, she got up to let him in. She went to the front door; he was not there. She looked outside for his car but saw nothing. Puzzled she returned to her bed. Moments later she saw the reflection of a Negro man in a mirror opposite her bedroom door. She looked up; and, in the night light from the bathroom across the narrow hall, she saw Alvin Lee Allen at her bedroom door, clad only in his jockey shorts, staring at her. He lunged at her, at the same time striking her violently with his left hand as she tried to get up. A struggle ensued on the bed, during which Allen attempted to rape Mrs. Foster. After a short while, however, Mrs. Foster, who was a large woman, succeeded in kicking her assailant in the groin with such force that he abandoned the struggle, ran out of the house and disappeared.
 

 Two days before, Allen had been hired to mow the lawn at the Foster home where Mrs. Foster had ample opportunity to observe him. At that time, she spoke to him and paid him for the work. She had no difficulty, therefore, in recognizing him on the night of the attempted rape.
 

 After Allen fled, Mrs. Foster summoned the neighbors and they called police, who
 
 *242
 
 arrived shortly thereafter. Mrs. Foster also called the doctor, because she was three months pregnant and in a state of extreme •excitement. Although she did not then know her assailant’s name, she declared to the police that night if they could get fingerprints from the lawnmower they would find that they belonged to the same person who attempted to rape her, pointing out that her assailant was the same person who had mowed the lawn two days earlier. She also informed the police that her assailant was left-handed.
 

 Police arrested Allen the next day in Homer. He was then 19 years old. For security reasons he was taken to the nearby town of Arcadia in the same judicial district, where on September 11, 1961 he was placed in a lineup with five or six others in •order that Mrs. Foster might have an opportunity to identify her assailant if he was among them. When Mrs. Foster saw Allen in the lineup, she readily identified him. Thereafter a wad of paper was tossed by one of the deputy sheriffs to each of the men in the lineup, who, in turn, tossed it hack. Allen caught the paper ball with his left hand.
 

 The Sheriff knew Allen’s father to be a property owner and taxpayer of Claiborne Parish, and, during this time, Allen’s father visited him at the jailhouse; yet no counsel was employed for Allen, there was no showing that he was indigent and he did not request counsel.
 

 That same day Allen prepared a written confession in his own handwriting. The next day, September 12, 1961, he was charged with attempt to commit aggravated rape. At the arraignment, in the Second Judicial District Court of Claiborne Parish, which occurred sometime later, he again did not request counsel and none was appointed to represent him; nor was he informed of his right to counsel. He entered a plea of guilty and was sentenced to serve twenty years in the state penitentiary.
 

 In February 1964, he sought release from his confinement in the penitentiary by writs of habeas corpus filed in the Twentieth Judicial District Court in West Feliciana Parish where the penitentiary is located. Counsel of his choosing represented him on that occasion and at all subsequent times until the present appeal. A hearing was granted by the Twentieth Judicial District Court to consider the allegation that the accused, as an indigent defendant brought to justice, was denied his right to court-appointed counsel. As there was no showing of indigency, or that the accused had requested counsel at the arraignment and sentencing, the writ was refused. Application was made to this court to review that decree. We denied writs. Allen v. Bennett, Warden, 246 La. 702, 166 So.2d 517 (1964).
 

 Another habeas corpus application was filed, this time in the United States District Court for the Eastern District of Louisiana in East Baton Rouge Parish, based upon the
 
 *244
 
 contention that Allen was not provided with or advised of his right to counsel. A full evidentiary hearing was held on January 15, 1965. Upon the facts established at that hearing, the Court decided that Allen had freely and voluntarily confessed to the crime.
 

 Furthermore the Court pointed out, with regard to the contention that Allen was never advised of his right to counsel and that no counsel was ever appointed by the Court to represent him, that Allen was arraigned on September 12, 1961, and the case of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, making the appointment of counsel mandatory, was not decided by the United States Supreme Court until March 18, 1963. It was the opinion of the United States District Judge that the Gideon Case was not retroactive. He decided, therefore, that under the state law at the time of the arraignment there was no violation of petitioner’s constitutionally guaranteed rights. Allen v. Hanchey, Warden, 238 F.Supp. 593 (E.D.La.1965).
 

 From this judgment, Allen took an appeal to the United States Court of Appeal, Fifth Circuit. In a per curiam opinion dated October 21, 1965 that court recognized that at the time the matter was before the Federal District Court, Williams v. State of Alabama, 341 F.2d 777 (5th Cir. 1965) announcing that the Gideon Case was retroactive had not yet been decided. However, since
 
 the
 
 Williams Case subsequently held that Gideon v. Wainwright should be given retroactive effect, the Fifth Circuit found it necessary to reverse and remand. Allen v. Hanchey, Warden, 352 F.2d 64 (1965).
 

 The record discloses the case was next active in the State Court of original trial jurisdiction in Claiborne Parish. On or about March 28, 1966, upon defendant Allen’s application, removal was obtained from the State Court to the United States District Court for the Western District of Louisiana. After hearing evidence, on its own motion, that court remanded the case to the Claiborne Parish Court.
 

 Counsel for Allen next filed a motion in the State trial court to suppress any evidence of identification by Mrs. Foster at the lineup of September 11, 1961. This filing took place five years after Allen’s arrest. A hearing was had on this motion at which evidence was taken concerning what transpired at the lineup. We have already related these facts. On September 27, 1966 the motion was overruled and a bill of exceptions was reserved.
 

 A jury trial then followed on October 24, 1966, based on the same charge of attempted aggravated rape to which Allen had previously pled guilty in 1961. At the trial Mrs. Foster testified and identified Allen as her assailant. No reference was made by anyone, however, to the pretrial lineup identification which occurred on September 11, 1961 or to the confession Allen had given. Allen’s counsel nevertheless urged objec
 
 *246
 
 tions to any identification testimony by Mrs. Foster, relying for support on the rule then recently announced by the Fifth Circuit in Wade v. United States that a lineup identification without the benefit of counsel made all identification testimony per se inadmissible. See Wade v. United States, 5 Cir., 358 F.2d 557 decided May 11, 1966.
 

 Allen’s counsel’s objection was based upon the contention that the lineup is a critical stage of the prosecution, and, although there was ample time to appoint counsel before the lineup, Allen was required to attend without benefit of counsel. He asserted, moreover, that Allen had not waived the right to counsel. Then, he argued, because Mrs. Foster knew her assailant was left-handed, when one of the deputies threw the paper ball to Allen at the lineup and he caught it in his left hand, the demonstration persuaded Mrs. Foster that Allen was “the man”. Hence Mrs. Foster’s subsequent identification of him at the trial was tainted by this unfair lineup demonstration; whereas, if Allen had been represented by counsel, he would have been advised that he was under no legal compulsion to catch objects thrown to him. With counsel, it was argued, cross-examination would further have assured the fairness of the proceedings.
 

 In summary, it was contended, this deprivation of counsel was a violation of the rights guaranteed to Allen by the Sixth Amendment to the United States Constitution which is made obligatory on the States by the Fourteenth Amendment. These objections to Mrs. Foster’s courtroom identification testimony were not considered valid, however, and were overruled. A bill of exceptions was reserved.
 

 Allen was convicted and sentenced this second time to serve fifteen years in the penitentiary. The present appeal was perfected and the case argued before us on June 8, 1967. Although appellant reserved numerous bills of exceptions at the trial, he only seeks review of the two bills regarding the identification testimony of the prosecuting witness.
 

 While this appeal was under consideration by us the United States Supreme Court decided United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, on June 12, 1967, in which it reversed the Fifth Circuit. This was the same case Allen’s counsel had cited in the trial court in support of his objection to the courtroom identification testimony of Mrs. Foster.
 

 Our study of that case leads us to believe that it differs from the case at bar on several significant fact issues, but it is unnecessary to our decision to undertake a detailed recitation of these distinctions. We need only recognize that the Wade decision in the United States Supreme Court stands generally for the proposition that a post-indictment lineup is a critical stage of a prosecution at which the-accused is entitled,
 
 *248
 
 under the Sixth Amendment, to the assistance of counsel as he would be at a trial itself. Thus, in the absence of an intelligent waiver of counsel, a courtroom identification at the trial, based upon pretrial lineup identification without the benefit of counsel, is a deprivation of Sixth Amendment Rights which are made obligatory on the States by the Fourteenth Amendment. The consequence is that a conviction obtained in a State Court under these circumstances cannot stand. A new trial must be granted at which this evidence is excluded,
 
 unless
 
 the prosecution can establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. 87 S.Ct. 1939.
 

 We think the case at bar comes squarely within the exception that the in-court identification by Mrs. Foster was based upon observations of the suspect other than the lineup identification. The proper test to be applied in such a situation is set forth in the Wade Case as a quotation from Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It reads as follows:
 

 “Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.” Maguire, Evidence of Guilt, 221 (1959).
 

 In the application of this test in the-present context, we have considered various factors suggested in the Wade opinion (87' S.Ct. 1940) ; for example, the prior opportunity to observe the alleged criminal act (here Mrs. Foster was in close physical contact with Allen when the criminal act was. committed) ; the existence of any discrepancy between any prelineup description and defendant’s actual description (there was no-discrepancy; in fact, all of Mrs. Foster’s prior statements were corroborated by the lineup) ; any identification prior to lineup-of another person (to the contrary, Mrs. Foster steadfastly insisted prior to the lineup identification that Allen was “the man”) ; the identification by picture of the defendant prior to the lineup (there was-none here, which demonstrates the independent character of Mrs. Foster’s identification) ; failure to identify the defendant on a prior occasion (this did not occur in this case) ; and the lapse of time between the alleged act and the lineup identification (the time lapse was less than six days, well within the period where identification could be certain.) It would be difficult to find a case in which the test is so clearly satisfied when the factors suggested by the Wade-Court are applied.
 

 Aside from the fact that we are of the opinion that Mrs. Foster’s courtroom
 
 *250
 
 identification of Allen was predicated upon observations and knowledge gained by her independently of the lineup, making this case fall within a clearly defined exception to the rule announced in the Wade Case, we are certain that the rule of the Wade Case is inapplicable here. For Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, declared unmistakably “that Wade * * affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date (June 12, 1967).” (Parentheses added.) The lineup in the case at bar, of course, occurred years before the Wade Case decision and it is unaffected thereby. Mrs. Foster’s in-trial identification therefore is not subject to the rule of the Wade Case.
 

 In making the rule of the Wade Case prospective the United States Supreme Court declared:
 

 “Today’s rulings were not foreshadowed in our cases; no court announced such a requirement until Wade was decided by the Court of Appeals for the Fifth Circuit, 358 F.2d 557. The overwhelming majority of American courts have always treated the evidence question not as one of admissibility but as one of credibility for the jury. Wall, Eyewitness Identification in Criminal Cases 38. Law enforcement authorities fairly relied on this virtually unanimous weight of authority, now no longer valid, in conducting pretrial confrontations in the absence of counsel.”
 

 Until now Louisiana has had no rule on the question of whether lineup identification conducted without counsel would render courtroom identification testimony inadmissible; and, since this case is not controlled by the Wade Case, we will rest our decision on the traditional rule which prevailed in most common law jurisdictions at the time of Allen’s trial. This requires that we approve the trial court ruling that the courtroom identification was admissible.
 

 For the reasons assigned, the conviction and sentence are affirmed.